Case 2:16-cv-00110 Document 18 Filed in TXSD on 11/18/16 Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
November 18, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL A DAVIS, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-110 |
| | § | |
| WILLIAM STEPHENS, *et al*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the Michael Unit in Tennessee Colony, Texas. Proceeding *pro se* and *in forma pauperis*, Petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on January 29, 2016 (D.E. 1).[1] Petitioner claims that his right to due process was violated in a disciplinary hearing that was held while he was incarcerated at the McConnell Unit which resulted in the imposition of punishment. Respondent filed a motion for summary judgment on July 21, 2016 to which Petitioner responded on September 19, 2016 (D.E. 15, 17). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary

---

[1] Pleadings submitted by inmates generally are considered filed as of the date they are placed in the prison mail system, as long as the prisoner states under penalty of perjury the date that he placed the petition in the mail system. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases. Petitioner in this case stated under penalty of perjury that he placed the petition in the prison mail system on January 18, 2016 (D.E. 1 at p. 10). However, he signed the petition on January 29, 2016 (*Id.*). Because Petitioner could not have signed the petition after he placed it in the prison mail system, it will be considered filed as of the date he signed it.

judgment be granted and Petitioner's habeas corpus petition be denied. It is further recommended that a Certificate of Appealability be denied.

## JURISDICTION

Jurisdiction and venue are proper in this court because the actions about which Petitioner complains occurred in Beeville, Bee County, Texas, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving concurrent twenty-year sentences for theft and aggravated assault of a child (Ex. A to Mot. for Sum. Jmt.; D.E. 12-1 at pp. 2-3). Petitioner does not complain about his holding convictions, but challenges the results of a disciplinary hearing. In disciplinary case number 20150197363 Petitioner was accused and found guilty of threatening to inflict harm on two correctional officers based on a letter Petitioner sent to a TDCJ-CID official stating that he thought his requests for help were being ignored and felt that "[he] must take matters into [his] own hands to resolve the situation." (Disp. Rept. and Attachment, DHR at pp. 2-6; D.E. 13-2 at pp. 3-7).[2]

In the offense report the charging officer wrote that on March 11, 2015 Petitioner submitted a letter to Warden Currie complaining about two officers, Correctional Officer Gutierrez and Sergeant Lopez. In the letter Petitioner stated, "I am so tired of CO Gutierrez harassing me and his abusive, malicious behavior. I feel that my pleas and concerns are being ignored and I must take matters into my own hands to resolve this

---

[2] "DHR" refers to the Disciplinary Hearing Record located at D.E. 13-2).

situation."  The charging officer interpreted the letter as a threat to inflict harm on Gutierrez and Lopez (Off. Rept., DHR at p. 3; D.E. 13-2 at p. 4).  During the investigation of the incident the Petitioner said he wrote the letter and did not offer any further explanation (DHR at pp. 4, 12; D.E. 13-2 at pp. 5, 13).

At the hearing, Petitioner testified that when he wrote that he was going to take matters into his own hands, he meant that he was going to contact the media about the harassment.  He was not threatening physical harm to anyone (DHR at p. 14; D.E. 13-2 at p. 15).  The charging officer was not called, but his statement and a copy of the letter were entered into the hearing record (DHR at pp. 2, 14; D.E. 13-2 at pp. 3, 15).

Petitioner was found guilty based on the officer's report, the letter, and Petitioner's testimony.  He was punished with eight days in solitary confinement, the loss of thirty days of recreation and commissary privileges, a reduction in Line Class from L2 to L3[3] and the loss of ninety days of good time (*Id.*).

Respondent asserts that Petitioner did not file any grievances related to the results of the disciplinary hearing and submitted an affidavit from a TDCJ program supervisor stating that no grievance records were found pertaining to the disciplinary case under consideration (Affidavit of Misti Sorenson, D.E. 13 at p. 2).  In his response to the

---

[3] The amount of good conduct time an inmate can earn depends on his Line Class.  When offenders enter TDCJ they are assigned a time-earning status of Line Class 1 and may work their way into a higher time-earning status or be placed in a lower time-earning status, depending on their behavior.  The number of good conduct days which may be earned in a particular Line Class is fixed by statute.  TDCJ Offender Orientation Handbook, rev. April 2016, at p. 8.
http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf (last viewed November 17, 2016).

motion for summary judgment, Petitioner claims that he wrote letters to the Warden after the disciplinary hearing was held but he does not claim that pursued the TDCJ grievance procedures.  Plaintiff stated in his complaint that he has submitted "I-60" forms and has never received a response to them.  In any event, Respondent does not seek dismissal of Petitioner's cause of action for failure to exhaust his administrative remedies, but reserved the right to argue exhaustion and the procedural default doctrine at a later time if warranted.

Petitioner asserts that his constitutional rights were violated when the hearing officer would not let him call witnesses or present copies of earlier letters he had written to the warden complaining about Gutierrez and Lopez.  Petitioner asks to have his line class status and his good time restored.

Petitioner also complains that Gutierrez, Lopez and another officer, Muro, have taken his personal property without giving him a record of the property they confiscated and that the property has not been returned to him.  Petitioner seeks reimbursement for the property that was confiscated.

In Respondent's motion for summary judgment, she argues that because Petitioner is not eligible for release to mandatory supervision, he cannot make out a claim that his due process rights have been violated by the loss of good time.  Respondent also argues that the other disciplinary actions do not implicate the Due Process clause of the Constitution and that Petitioner's arguments are otherwise without merit.  Respondent did not address Petitioner's complaints about his property being confiscated.

## APPLICABLE LAW

**A.  Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process and acknowledged that under certain circumstances a state may create liberty interests which are protected by the Due Process Clause.  *Id.* at 483-484 (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)).  However the interests are generally limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.

The Court further noted that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that while prisoners do not shed all constitutional rights are the prison gate, "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  *Id.* at 485 (quoting *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977) and *Price v. Johnston*, 334 U.S. 266, 285 (1948)).  "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  *Id.*  The touchstone of the inquiry into the existence of a protected, state-created liberty interest is the nature of the condition in relation to the ordinary incidents of prison

life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)(citing *Sandin*, 515 U.S at 484). Petitioner's complaints are examined in light of this standard.

1. **Line Class**

Petitioner's Line Class status was reduced from Line Class 2 to Line Class 3. Generally, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995)(*citing Meachum v. Fano*, 427 U.S. 215, 229, n. 8 (1976)). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Thus, Petitioner cannot make out a cause of action based on the reduction in line class.

2. **Loss of Good Time**

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th

Cir. 1997)(citing Tex. Code Crim. P. Ann. art. 42.18 § 2(2)).[4]  Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date.  Tex. Gov't Code Ann. §508.147 (West 2014).  The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time. *Malchi*, 211 F.3d at 957-958.

However, prisoners who commit certain offenses are excluded from eligibility for mandatory release.  *See* Tex. Gov't Code § 508.149 (a) (West 2001) (lists offenses that render an inmate ineligible for release to mandatory supervision).  In this case, Petitioner's conviction for aggravated sexual assault of a child precludes his release to mandatory supervision.  Tex. Gov't Code § 508.149(a)(8)(West 2001); Tex. Penal Code § 22.021(West 2001).  Because Petitioner is not eligible for release to mandatory supervision, he does not have a liberty interest in earning or keeping good time credits and thus has failed to make out a claim that his due process rights have been violated. Accordingly, summary judgment should be entered for Respondent.

C. **Property Claim**

Petitioner seeks return of property taken from him or reimbursement for the property which he claims is valued at $350.00.  Such a claim cannot be brought in this habeas action because it would not necessarily demonstrate the invalidity of his confinement or its duration.  Habeas remedies do not replace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of state

---

[4] Currently located at Tex. Gov't Code Ann. § 508.001(5).

confinement. *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (citing *Edwards v. Balisok*, 520 U.S. 906 (1997)).

If Petitioner seeks the return of his property, he can file an action in state court pursuant to Tex. Gov't Code § 501.007, or file a § 1983 action in federal court if the state court remedy would be inadequate. *See Spurlock v. Schroedter*, 88 S.W. 3d 733, 737 (Tex. App. – Corpus Christi 2002, no pet.)(prisoner's claim for reimbursement for lost property is an ordinary tort claim that can be tried in state court once statutory prerequisites of §§ 501.007 and 501.008 have been met); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)(intentional deprivations of property do not violate due process provided an adequate state post-deprivation remedy is available); and *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (burden is on petitioner to show that state's post-deprivation remedy is not adequate). Petitioner cannot pursue his deprivation of property claim via this habeas petition and therefore it should be dismissed without prejudice.

### D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right

on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In Petitioner's case, it is recommended that his cause of action be denied on the merits. If the district court orders that Petitioner's cause of action be dismissed and Petitioner seeks a COA in order to proceed with his case, it is further recommended that

the COA be denied because reasonable jurists would not find it debatable that petitioner failed to state a claim for violation of a constitutional right.

### RECOMMENDATION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (D.E. 12) be GRANTED. Petitioner's cause of action for habeas corpus relief should be DENIED. It is further recommended that Petitioner's cause of action for the taking of his property should be DISMISSED without prejudice because he cannot bring it as part of this habeas action. In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 18th day of November, 2016.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).